**SO ORDERED.**

**SIGNED this 07 day of March, 2007.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INTERIOR RESOURCES, INC., | ) | Case No. 03-13110 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| STEVEN L. SPETH, TRUSTEE | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 05-5228 |
| | ) | |
| KIMBALL INTERNATIONAL MARKETING, INC., | ) | |
| d/b/a KIMBALL OFFICE FURNITURE, CO., and | ) | |
| d/b/a NATIONAL OFFICE FURNITURE COMPANY | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court today is a motion for summary judgment filed by the above-named

defendant ("Kimball") on the complaint of Steven L. Speth, Trustee of the estate of Interior

1

Resources, Inc. ("Trustee") to recover certain preferential transfers. The Trustee appears by Tim J. King, Speth & King, Wichita, Kansas. Kimball appears by Shannon Wead, Foulston & Siefkin, LLP, Wichita, Kansas and James W. Rossow, Rubin & Levin, P.C., Indianapolis, Indiana.

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment and is made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Rule 56, in articulating the standard of review for summary judgment motions, provides that judgment shall be rendered if all pleadings, depositions, answers to interrogatories, and admissions and affidavits on file show that there are no genuine issues of any material fact and the moving party is entitled to judgment as a matter of law.[1] In determining whether any genuine issues of material fact exist, the Court must construe the record liberally in favor of the party opposing the summary judgment.[2] An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim."[3] Here, as set forth below, there are no issues of fact.

The Trustee concedes Kimball's statement of uncontroverted facts and the following averments are deemed facts for the purpose of deciding this motion. Kimball supplied inventory to the debtor and its various affiliates, all on a running account. On the date of the petition, June 10, 2003, debtor owed Kimball $546,936.95. In the 90 days preceding that date, the debtor

---

[1] Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.

[2] *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988) (citation omitted).

[3] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

2

transferred money to Kimball from March 19, 2003 until May 27, 2003. During that same period, Kimball shipped and invoiced goods to debtor in varying amounts. The table below sets out the dates of the questioned transfers and Kimball's shipments.

| Date | Transfers (Preference Amount) | Kimball's shipments (Subsequent Advance) |
|---|---|---|
| 3/19/03 | $ 9,555.82 | |
| 3/22/03-3/31/03 | | $30,514.98 |
| 4/1/03 | $69,333.31 | |
| 4/2/03-4/24/03 | | $34,428.27 |
| 4/25/03 | $17,834.06 | |
| 4/26/03-5/14/03 | | $27,160.90 |
| 5/20/03 | $ 455.53 | |
| 5/21/03 | | $25,501.04 |
| 5/27/03 | $ 3,391.31 | |
| 6/10/03 | *Chap 11 bankruptcy petition filed* | |
| 6/19/03 | | $12,852.51 |

Analysis

With the exception of two payments, Kimball does not dispute for the purpose of this motion that the transfers it received were preferences, *i.e.,* meeting the five elements set out in § 547(b).[4] Kimball argues on summary judgment that these payments were followed by the transfer of subsequent new value, entitling Kimball to the refuge of § 547(c)(4). That subsection provides that the trustee may not avoid a transfer –

---

[4] Kimball asserts that two payments, $455.91 and $3,391.31, were intended to be prepayments for goods to be shipped later and therefore not payments on account of antecedent debt.

3

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor--

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor . . . .[5]

In order to qualify for this defense, the creditor must show that (1) new value was given after the transfer; (2) the new value was unsecured; and (3) that it remained unpaid.[6]

As can be seen from the table above, Kimball gave new value after the transfers questioned by the Trustee. The sole legal issue here is whether giving new value only serves as a defense to the preferential transfer that immediately preceded it. In other words, the Trustee questions whether Kimball may "carry forward" a net preference and absorb it with later new value. At particular issue is the transfer of $69,332.32 on April 1, 2003 that was followed by new value of $34,428.27 on April 2 through 24, 2003. Under the Trustee's theory, the $34,905.05 is unprotected by the defense and, therefore recoverable by the estate. Kimball argues that a creditor need only demonstrate that the new value was conferred after the avoidable transfer occurred and that the value it gave debtor after April 24, 2003 was more than sufficient to set off the net preference.

The Trustee relies on *Leathers v. Prime Leather Finishes, Inc.* where the court held that "the proper mode of analysis is that after each preferential payment, an assessment must be made

---

[5] 11 U.S.C. § 547(c)(4), West (2007).

[6] *Rushton v. E&S International Enterprises, Inc. (In re Eleva, Inc.)*, 235 B.R. 486, 488 (10th Cir. B.A.P. 1999).

4

Case 05-05228   Doc# 43   Filed 03/07/07   Page 4 of 6

as to how much property the creditor restored to the debtor before the next preferential payment was made."[7] The *Leathers* analysis is, by far, the minority view. Numerous courts have held that the new value need only be given subsequent to a transfer and not necessarily immediately after a particular transfer.[8] Collier's refers to this as the "better reasoned rule."[9] Another commentator has pointed out that if the policy of § 547(c)(4) is to encourage suppliers to trade with distressed businesses, that policy would be defeated by *Leathers,* which provides no incentive for suppliers to ship anything of value beyond the amount of the debtor's most recent payment.[10]

Indeed, the plain language of § 547(c)(4) supports Kimball's position. All that it provides is that the giving of new value be subsequent to receiving the preference. Thus, even if the new value was not *immediately* extended after the creditor received the preference, the creditor may still employ the subsequent new value defense.[11] Applying this method of analysis,

---

[7] 40 B.R. 248, 251 (D. Maine 1984).

[8] See *Williams v. Agama Systems, Inc. ( In re Micro Innovations Corp.)*, 185 F.3d 329, 336-37 (5th Cir.1999); *Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.)*, 52 F.3d 228, 232 (9th Cir.1995); *Crichton v. Wheeling Nat'l Bank ( In re Meredith Manor, Inc.)*, 902 F.2d 257, 258 (4th Cir.1990); *Gonzales v. DPI Food Products Co. (In re Furrs Supermarkets, Inc.)*, 296 B.R. 33, 45 (Bankr. N.M. 2003); *Pelz v. Application Engineering Group, Inc. (In re Bridge Information Systems, Inc.)*, 287 B.R. 258, 267 (Bankr. E.D. Mo. 2002); and *Fitzpatrick v. Rockwood Water Sys. ( In re Tenn. Valley Steel Corp.)*, 201 B.R. 927, 940 (Bankr.E.D.Tenn.1996) (Collecting cases).

[9] Lawrence P. King, 5 COLLIER ON BANKRUPTCY ¶ 547.04, p. 547-77 (15th rev. ed. 2005).

[10] *See* Harris P. Quinn, *The Subsequent New Value Exception Under Section 547(c)(4) of the Bankruptcy Code – Judicial Gloss is Creditors' Loss,* 24 Mem. St. U.L. Rev. 667, 675-679 (Summer 1994).

[11] See *In re Furr's Supermarkets, Inc.*, 296 B.R. at 45 citing *IFRM*, 52 F.3d at 232..

5

all of Kimball's extensions of new value are sufficient to absorb the preferences it received as demonstrated by the following table. In particular, the net preference remaining on April 24, 2003 may be offset by the subsequent new value given as of May 14, May 21, and June 19, 2003, affording Kimball a complete § 547(c)(4) defense to the Trustee's complaint.

| Date | Preferential Payments | Less Subsequent New Value | Balance |
|---|---|---|---|
| 3/19/03 | $9,555.82 | | |
| (3/22-31/03) | | $30,514.98 | $0 |
| 4/1/03 | $69,333.32 | | $69,333.32 |
| (4/2-24/03) | | $34,428.27 | $34,905.05 |
| 4/25/03 | $17,834.06 | | $52,739.11 |
| (4/26/03-5/14/03) | | $27,160.90 | $25,578.21 |
| 5/20/03 | $455.53 | | $26,033.74 |
| (5/21/03) | | $25,501.04 | $532.70 |
| 5/27/03 | $3,391.31 | | $3,924.01 |
| (6/19/03) | | $12,852.51 | $0 |

As the above table demonstrates, Kimball's transfer of subsequent new value to the debtor and therefore has a complete defense to the Trustee's complaint to recover the preferential transfers made by the debtor. Accordingly, Kimball is entitled to judgment as a matter of law and its motion for summary judgment is GRANTED. Judgment should be entered for Kimball on the Trustee's complaint, the Trustee to bear costs. A Judgment on Decision will issue this day.

6